1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

JOEL H. PHILLIPS and KATHIE A.
PHILLIPS,

                                        Plaintiffs,

         v.

JP MORGAN CHASE BANK, N.A.;
   and DOES 1 through 50, Inclusive,

                                        Defendants.

CASE No: 11-CV-1404 W (MDD)

**ORDER GRANTING IN-PART
AND DENYING IN-PART
DEFENDANT'S MOTION TO
DISMISS [DOC. 7]**

        Pending before the Court is Defendant JP Morgan Chase Bank, N.A.'s ("JP Morgan") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  In its motion, JP Morgan also requests judicial notice of five exhibits pursuant to Federal Rule of Evidence 201.  Plaintiffs Joel H. Phillips and Kathie A. Phillips (the "Phillipses") oppose the motion to dismiss and object to judicial notice of one of the requested exhibits.  The Court decides the matter on the papers submitted and without oral argument.  See Civ. L.R. 7.1(d)(1).  For the following reasons, the Court **GRANTS** JP Morgan's request for judicial notice of all exhibits, and **GRANTS IN-PART** and **DENIES IN-PART** JP Morgan's motion to dismiss.

1  **I.    BACKGROUND**

2      On December 1, 2007, the Phillipses obtained a loan from Washington Mutual

3  Bank, F.A. ("Washington Mutual") to refinance real property located at 2374 Sleepy

4  Hill Lane, Escondido, California (the "Property").  (*Compl.* [Doc. 1-1] ¶¶ 2, 8.) The

5  resulting Adjustable Rate Note and Deed of Trust were subsequently acquired by JP

6  Morgan as successor-in-interest to Washington Mutual.  (*Id.* at ¶¶ 8, 9.)

7      In August 2008, the Phillipses grew concerned about their ability to make

8  mortgage payments.  (*Id.* at ¶ 21.)   Around the same time, the Phillipses also

9  experienced an unexpected increase in payments.  (*Id.* at ¶ 27.)  In early 2010, after

10  efforts to obtain a loan modification were unsuccessful, the Phillipses fell behind on their

11  mortgage payments.  (*Id.* at ¶¶ 24-25, 30.)

12      On August 6, 2010, JP Morgan recorded a Notice of Default and Election to Sell

13  under Deed of Trust with the San Diego County Recorder's Office.  (*Id.* at ¶ 45; *Pls.' Ex.*

14  *C* [Doc. 1-1].)  Subsequently, on November 12, 2010, JP Morgan recorded a Notice of

15  Trustee's Sale.  (*Compl.* ¶ 46; *Pls.' Ex. D* [Doc. 1-1].)  The Property was sold by trustee's

16  sale on December 3, 2010, and the Trustee's Deed upon Sale was recorded on

17  December 9, 2010.  (*Compl.* ¶ 47; *Pls. Exh. E* [Doc 1-1].)  The Phillipses allege that they

18  never received a copy of the Notice of Default or the Notice of Trustee's Sale, and did

19  not learn of the sale until after the Property was sold.  (*Compl.* ¶¶ 45-47.)

20      On May 24, 2011, the Phillipses filed this lawsuit in the San Diego Superior

21  Court, alleging various state law causes of action, violation of the federal Real Estate

22  Settlement and Procedures Act ("RESPA"), and violation of the federal Truth in

23  Lending Act ("TILA").  (*See Compl.*)  On June 24, 2011, JP Morgan removed the action

24  to federal court under federal question jurisdiction.  (*Notice Removal* 2 [Doc. 1].)  On

25  August 12, 2011, JP Morgan filed the pending motion to dismiss pursuant to Federal

26  Rule of Civil Procedure 12(b)(6).  (*Def.'s Mot. Dismiss* [Doc. 7-1].)  In its motion, JP

27  Morgan also requested that the Court take judicial notice of five exhibits pursuant to

28  Federal Rule of Evidence 201.  (*Def.'s Req. for Judicial Notice* [Doc. 7-2].)  The Phillipses

timely opposed JP Morgan's motion to dismiss and requests for judicial notice on September 12, 2011.  (*Pls.' Opp'n* [Doc. 8]; *Pls.' Opp'n to Judicial Notice* [Doc. 9].)  On September 19, 2011, JP Morgan replied.  (*Def.'s Reply* [Doc. 11].)

## II.   LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency.  See N. Star Int'l v. Ariz. Corp. Comm'n., 720 F.2d 578, 581 (9th Cir. 1983).  All material allegations in the complaint, "even if doubtful in fact," are assumed to be true.  Id.  The court must assume the truth of all factual allegations and must "construe them in light most favorable to the nonmoving party."  Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002); see also Walleri v. Fed. Home Loan Bank of Seattle, 83 F.3d 1575, 1580 (9th Cir. 1996).

As explained by the Supreme Court, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).  Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.  A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss.  Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  However, courts may consider documents specifically identified in the complaint whose authenticity is not questioned by parties.  Fecht v. Price Co., 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superceded by statutes on other grounds).  Moreover, courts may consider the full text of those documents, even when

1   the complaint quotes only selected portions.  Id.  Courts may also consider material

2   properly subject to judicial notice without converting the motion into one for summary

3   judgment.  Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994) (citing Mack v. S. Bay

4   Beer Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986), abrogated on other grounds by

5   Astoria Fed. Sav. and Loan Ass'n v. Solimino, 501 U.S. 104 (1991)).

6

7   **III.   DISCUSSION**

8          **A.    JP Morgan's Requests for Judicial Notice**

9          JP Morgan requests that the Court take judicial notice of five exhibits: the Deed

10  of Trust dated December 3, 2007 and recorded December 7, 2007 (Def.'s Req. for Judicial

11  Notice Exh. A.); the Notice of Default and Election to Sell Under Deed of Trust (Id.

12  Exh. B.); the Notice of Trustee's Sale (Id. Exh. C.); the Trustee's Deed upon Sale (Id.

13  Exh. D.); and the Purchase and Assumption Agreement ("PAA") between the Federal

14  Deposit Insurance Corporation ("FDIC")  and JP Morgan dated September 25, 2008.

15  (Id. Exh. E.)

16         The Phillipses object only to judicial notice of the PAA, on the grounds that the

17  document lacks foundation, is inadmissible hearsay, and is irrelevant.  (See Pls.' Opp'n

18  to Judicial Notice.)  JP Morgan contends that the PAA is judicially noticeable because

19  it is a matter of public record available on the FDIC's website and because the Phillipses

20  do  not  dispute  the  PAA's  authenticity  or  contents.   (Def.'s Reply 2-3 (citing

21  http://www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf).)

22         A court may take judicial notice of an adjudicative fact which is "not subject to

23  reasonable dispute in that it is . . . capable of accurate and ready determination by resort

24  to sources whose accuracy cannot be reasonably questioned."  Fed. R. Evid. 201(b).

25  Matters of public record are judicially noticeable.  Reyn's Pasta Bella, LLC v. Visa USA,

26  Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).  Here, the PAA is publicly available online,

27  and a number of courts have already found that this PAA is judicially noticeable.  See,

28  e.g., Allen v. United Fin. Mortg. Corp., 660 F. Supp. 2d 1089, 1094-95 (N.D. Cal.

2009); Rockwell v. Chase Bank, 2011 WL 2292353, at *1 (W.D. Wash. June 7, 2011).

1  Moreover, the Phillipses do not dispute the PAA's authenticity or accuracy.  (*See Pls.'*
2  *Opp'n to Judicial Notice*.)

3        Additionally, the PAA is highly relevant and does not lack foundation, because
4  the PAA bears directly on the limits of JP Morgan's liability to the Phillipses, and the
5  Phillipses themselves identify JP Morgan as the successor-in-interest to Washington
6  Mutual.  See Prescott Cos. v. Mt. Vernon Fire Ins. Co., 2010 WL 1495430, at *1 n.1
7  (S.D. Cal. April 14, 2010) (overruling relevance and foundation objections to judicial
8  notice of a matter of public record that limited defendant's liability to plaintiff).  Indeed,
9  many of the  Phillipses' claims are dependent upon the theory that JP Morgan assumed
10  at least some liability from Washington Mutual.  Thus, how much liability JP Morgan
11  assumed is highly relevant.  See id.

12        Finally, the Phillipses' hearsay objection also fails.  The Court takes judicial notice
13  only of the existence of the PAA and JP Morgan's participation in the agreement with
14  the FDIC, without considering the PAA for the truth of the matter asserted therein.
15  See Fed. R. Evid. 801(c).  The legal effect of the PAA is readily determinable from the
16  analysis of fellow courts.  See Yeomalakis v. F.D.I.C. 562 F.3d 56, 60 (1st Cir. 2009)
17  ("When Washington Mutual failed, [JP Morgan] acquired many assets but its agreement
18  with the FDIC retains for the FDIC 'any liability associated with borrower claims for
19  payment of or any liability to any borrower for monetary relief, or that provide for any
20  other form of relief to any borrower.'"); Molina v. Wash. Mut. Bank, 2010 WL 431439,
21  at *4 (S.D. Cal. 2010) (Gonzalez, C.J.).

22        The Court therefore takes judicial notice of each of JP Morgan's requested
23  exhibits, including the PAA, in considering JP Morgan's motion to dismiss.

24
25  **B.   JP Morgan's Motion to Dismiss**
26        The Phillipses' complaint states the following causes of actions against JP Morgan:
27  (1) set aside trustee's sale; (2) cancellation of deed; (3) breach of implied covenant of
28  good faith and fair dealing; (4) unlawful, unfair, and fraudulent business practices; (5)
violation of California Civil Code § 2923.5; (6); violation of California Civil Code §

2923.6; (7) violation of California Civil Code § 1916.7; (8) demand for accounting; (9) violation of California Civil Code §§ 1920 and 1921; (10) breach of fiduciary duty; (11) quiet title; (12) promissory fraud; (13) impossibility; (14) intentional infliction of emotional distress; (15) declaratory relief; (16) violation of the Truth in Lending Act, 15 U.S.C. § 1601, ("TILA"); (17) violation of California Civil Code § 1637; and (18) unconscionability.  (*Compl.*)  JP Morgan moves to dismiss all eighteen causes of action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (*See Def.'s Mot. Dismiss.*)

### 1.   Borrower-Related Liability

First, JP Morgan argues that the Phillipses' third, fourth, seventh, ninth, tenth, thirteenth, fifteenth, sixteenth, seventeenth, and eighteenth causes of action fail to state a claim because JP Morgan did not assume borrower-related liability from Washington Mutual pursuant to the PAA.  (*Def.'s Mot. Dismiss* 4-6.)

The PAA between the FDIC and JP Morgan limits JP Morgan's liability to borrower claims based on conduct occurring *before* September 25, 2008, when JP Morgan purchased relevant portions of Washington Mutual. Yeomalakis v. F.D.I.C. 562 F.3d at 60; Molina, 2010 WL 431439 at *4.  However, as the Phillipses note (and JP Morgan does not dispute), the PAA "provides no protection to [JP Morgan] for its own conduct *after* September 25, 2008."  (*Pls.' Opp'n* 15.) (emphasis added).  With this in mind, the Phillipses third, fourth, seventh, ninth, tenth, thirteenth, fifteenth, sixteenth, seventeenth, and eighteenth causes of action are **DISMISSED WITHOUT LEAVE TO AMEND** to the extent they are borrower claims premised on conduct occurring before September 25, 2008.

### 2.   Setting Aside Trustee's Sale and Cancellation of Deed of Trust

In their first and second causes of action, the Phillipses seek to set aside the trustee's sale of the Property and cancel the Deed of Trust.  (*Compl.* ¶¶ 13-14.)  JP

Morgan argues that the Phillipses lack standing to pursue causes of action for setting aside the trustee's sale and cancellation of the Deed of Trust because the Phillipses have not tendered the full amount of their indebtedness to JP Morgan.  (*Def.'s Mot. Dismiss* 3-4.)   In the Complaint, the Phillipses purport to tender the market value of the Property at the time of the trustee's sale, which they argue is sufficient tender to reinstate their rights under the Phillipses' Deed.  (*Compl.* ¶ 51.)   In doing so, the Phillipses also argue that full tender of their indebtedness to JP Morgan is not required because "the rule requiring tender in order to challenge irregularities in a Trustee's Sale is not a bright-line rule."  (*Pls.' Opp'n* 14.) (citing Storm v. Am.'s Servicing Co., 2009 WL 3756629, at *6 n.9 (S.D. Cal. Nov. 6, 2009) and Humboldt Sav. Bank v. McCleverty, 161 Cal. 285, 291 (1911)).

It is well established under California law that a "valid and viable" tender of payment for the debt owed is essential to an action to cancel a sale under a deed of trust. Karlsen v. Am. Sav. & Loan Ass'n, 15 Cal. App. 3d 112, 117 (1971).  The offer of tender "must be one of full performance ... and must be unconditional to be valid." Arnolds Mgmt. v. Eischen, 158 Cal. App. 3d 575, 580 (1984). "[T]ender is an essential element of any causes of action based upon irregularities in the sale procedure."  Id.; accord Storm, 2009 WL 3756629, at *6 n.9  ("[T]ender of the indebtedness is required in an action to set aside a trustee's sale for irregularities in sale notice or procedure. . . . The Court is unaware of any case holding there is a bright-line rule requiring tender of the unpaid debt to set aside a sale in *other circumstances*, such as where a trustee allegedly sells property that is not encumbered.") (citing McCleverty, 161 Cal. at 291) (emphasis added).

Here, the Phillipses seek to set aside the trustee's sale and cancel the Trustee's Deed due to improper execution, delivery, and recording of the Trustee's Deed. (*Compl.* ¶ 50.)  Because these causes of action are premised on irregularities in the foreclosure sale, full and unconditional tender is required as a bright line rule.  Eischen, 158 Cal. App. 3d at 580.  To this end, tender of the amount necessary to reinstate the Phillipses'

1  Deed, rather than to repay their full indebtedness, is insufficient.  Lawrence v. Aurora
2  Loan Servs., 2010 WL 364276, at *7 (E.D. Cal. Jan. 25, 2010).

3      Accordingly, the Phillipses' first and second causes of action to set aside the
4  trustee's sale and cancel the deed are **DISMISSED WITH LEAVE TO AMEND**.

5

6          **3.   Breach of Implied Covenant of Good Faith and Fair Dealing**

7      In their third cause of action, the Phillipses allege that JP Morgan breached the
8  implied covenant of good faith and fair dealing in the Adjustable Rate Note by not
9  providing certain disclosures, giving the Phillipses an unaffordable loan, failing to
10 negotiate in modification in good faith, not providing requested documents, and
11 wrongfully foreclosing on the Property.  (*Compl.* ¶ 60.)  As an initial matter, all grounds
12 except the loan modification, document requests, and wrongful foreclosure were
13 previously dismissed pursuant to JP Morgan's limited liability under the PAA because
14 they occurred prior to September 25, 2008.  (*See supra,* Sec. IIIB1.)  JP Morgan also
15 argues that the Phillipses fail to allege the terms of the contract breached or the
16 breaching conduct necessary to sustain an action for breach of implied covenant of good
17 faith and fair dealing.  (*Def.'s Mot. Dismiss* 7.)

18     Parties to a contract have a duty of good faith and fair dealing in the contract's
19 performance.  Carma Developers v. Marathon Dev. Cal., 2 Cal. 4th 342, 371 (1992).
20 A party may not engage in objectively unreasonable conduct that, while perhaps not
21 technically breaching a contract, frustrates the express terms and purpose of the
22 agreement.  See id. at 373.  However, the "implied covenant of good faith and fair
23 dealing is limited to assuring compliance with the express terms of the contract, and
24 cannot be extended to create obligations not contemplated by the contract." Pasadena
25 Live, LLC v. City of Pasadena, 114 Cal. App. 4th 1089, 1093–94 (2004).  Because the
26 Phillipses' do not allege the express terms of the contract relating to loan modification,
27 document requests, or foreclosure procedure, the Complaint contains insufficient factual
28 allegations to create a plausible claim for breach of the covenant of good faith.  See
Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

11-CV-1404W

Accordingly, the Phillipses' third cause of action as it relates to JP Morgan's actions after September 25, 2008 is **DISMISSED WITH LEAVE TO AMEND**.

### 4. Violation of California Civil Code § 2923.5

In the their fifth cause of action, the Phillipses allege that JP Morgan violated California Civil Code § 2923.5. (*Compl.* ¶ 68.) Section 2923.5 requires lenders to contact a borrower in person or by telephone before filing a notice of default "in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Valverde v. Wells Fargo Bank, N.A., 2011 WL 3740836, at *8 (N.D. Cal. August 25, 2011) (citing Cal. Civ. Code § 2923.5(a)(2)). The sole cause of action provided by § 2923.5 is postponement of a foreclosure sale "until the lender comes into compliance with the statute." Id. (citing Mabry v. Superior Court, 185 Cal. App. 4th 208, 213 (2010)). Accordingly, where sale of the property has already occurred, a § 2923.5 claim is moot. Id.

JP Morgan argues that because the foreclosure sale has already occurred, the Phillipses' cause of action pursuant to § 2923.5 is moot. (*Def.'s Mot. Dismiss* 10.) The Court agrees. Therefore, the Phillipses' fifth cause of action under § 2923.5 fails to state a claim, and is **DISMISSED WITHOUT LEAVE TO AMEND**.

### 5. Violation of California Civil Code §§ 1916.7, 1920, and 1921

The Phillipses' seventh and ninth causes of action are for violations of California Civil Code §§ 1916.7, 1920, and 1921, which relate to indexing and disclosure requirements for adjustable rate mortgages. (*Compl.* ¶¶ 83-86, 92-93.) JP Morgan argues that these causes of action fail to state a claim because these California Civil Code sections provide no private rights of action and are preempted by the federal Alternative Transaction Parity Act ("AMTPA"), 12 U.S.C. § 3803(c). (*Def.'s Mot. Dismiss* 10-11.) The Phillipses respond that although the provisions do not expressly create private rights of action, "a private right of action is implied from the legislature's

1   silence on the subject," and that preemption does not apply if the loan originated under

2   state law, which the Phillipses argue is an issue of proof, not pleading.  (*Pls.' Opp'n* 18.)

3       Sections 1916.7, 1920, and 1921 apply to loans originating under state law and

4   do not provide private causes of action.  See Cal. Civ. Code §§ 1916.7(c), 1920, 1921;

5   Esoimeme v. Wells Fargo Bank, 2011 WL 3875881, at *12 (E.D. Cal. Sept. 1, 2011).

6   Although California courts have implied private rights of action from other, similar

7   statutes, the Phillipses provide no California authority suggesting private rights of action

8   exist for the statutes at issue here.  See Mabry, 185 Cal. App. 4th at 213 (implying

9   private right of action for violation of California Civil Code § 2923.5); (*See Pls.' Opp'n*

10  18.)   Further, other district courts applying §§ 1916.7, 1920, and 1921 have not

11  recognized private rights of action.  See Esoimeme, 2011 WL 3875881, at *12 (no

12  private rights of action under §§ 1916.7, 1920 or 1921); Tayag v. Nat'l City Bank, 2009

13  WL 943897, at *5 n.2 (N.D. Cal. Apr.7, 2009) (no § 1916.7 private right of action);

14  Nool v. HomeQ Servicing, 653 F. Supp. 2d 1047, 1055 n.5 (E.D. Cal. 2009) (no

15  authority supports § 1920 private right of action).  Here, the Phillipses' seventh and

16  ninth causes of action fail to state a claim because the code provisions do not provide

17  private causes of action.  See Esoimeme, 2011 WL 3875881, at *12.

18      Even if §§ 1916.7, 1920, and 1921 did provide private rights of action, a plaintiff

19  would have to allege facts showing that the loan originated under state law in order to

20  show that §§ 1916.7, 1920, and 1921 applied, and were not preempted by AMPTA.  See

21  Pagtalunan v. Reunion Mortg. Inc., 2009 WL 961995, at *4 (N.D. Cal. April 8, 2009)

22  (dismissing claims under same provisions where plaintiff failed to allege facts that their

23  loan originated under state law, not AMPTA).  The Phillipses failed to allege such facts,

24  and therefore would fail to state a claim for relief even if a private rights of action

25  existed under the statutes.  The Phillipses' seventh and ninth causes of action are

26  **DISMISSED WITHOUT LEAVE TO AMEND**.

27  //

28  //

### 6.   Demand for Accounting

The Phillipses' eighth cause of action is stated as a demand for accounting, but also appears to allege a violation of RESPA, 12 U.S.C. § 2605.  For that reason, the Phillipses' eighth cause of action will be analyzed as both.

To the extent the eighth cause of action is a demand for accounting, the Phillipses seek to ascertain the amount of money the they owe JP Morgan.  (*Compl.* ¶ 87-90.)  The Phillipses contend that where money is due but the amount cannot be ascertained, a plaintiff may seek an equitable action for accounting.  (*Pls.' Opp'n* 19.)  JP Morgan argues that the Phillipses' fail to state a claim because the right to an accounting is a remedy, not a cause of action, and the accounting remedy requires a fiduciary relationship between the parties, which does not exist here. (*Def.'s Mot Dismiss* 11; *Def.'s Reply* 5.)

"A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is *due the plaintiff* that can only be ascertained by an accounting."  <u>Teselle v. McLoughlin</u>, 173 Cal. App. 4th 156, 179 (2009) (emphasis added) (citation omitted). Contrary to JP Morgan's argument, an action for accounting does not always require a fiduciary relationship.  <u>Id.</u>  However, a plaintiff must allege the defendant owes the plaintiff an otherwise unascertainable amount. <u>Flowers v. Wells Fargo Bank, N.A.</u>, 2011 WL 2748650, at *8 (N.D. Cal. July 13, 2011) (citing <u>Baxter v. Krieger</u>, 157 Cal. App. 2d 730, 732 (1958)).  Here, the Phillipses pled insufficient facts to sustain a demand for accounting because they do not allege that JP Morgan *owes* them any unascertained amount of money.  (*Compl.* ¶ 88.); <u>see</u> <u>Robertson</u>, 749 F.2d at 534.  For that reason, the Phillipses' demand for an accounting is **DISMISSED WITH LEAVE TO AMEND**.

//

//

//

The Phillipses' eighth cause of action also appears to allege a violation of § 2605(e) of RESPA.[1]   (*Compl.* ¶ 88.)   Construing the cause of action as a RESPA violation, it appears that the Phillipses seek relief for JP Morgan's failure to respond to a Qualified Written Request ("QWR").  See 12 U.S.C. § 2605(e).

RESPA defines a QWR as follows:

> [A] qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(b).  "A QWR must seek information relating to the servicing of the loan; a request for loan origination documents is not a QWR."  Esoimeme, 2011 WL 3875881, at *13 (citation omitted).  Within sixty days of receiving a QWR, a servicer shall make appropriate corrections to a borrower's account, explain reasons the servicer believes the borrowers account is correct, or provide an explanation why requested information is unavailable. § 2605(e)(2).  The remedy for a servicer's failure to respond to a QWR under § 2605(e) is limited to actual damages cause by the failure to respond. § 2605(f).

A court may dismiss a § 2605 claim for failing to allege that the borrower sent "a specific inquiry that constitutes a QWR" or failing to "allege any pecuniary loss from defendant's alleged failure to respond to the QWR."  Esoimeme, 2011 WL 3875881, at

---

[1] JP Morgan argues that the eighth cause of action should be dismissed because a "demand for accounting" is a remedy, not a cause of action.  (*Def.'s Mot. Dismiss* 11) Because the Court also considers the eighth cause of action to the extent that it may be a RESPA claim, the Court makes no determination whether a demand for accounting is a remedy or cause of action under California law and only refers to it as a "cause of action" in accordance with that characterization in the Complaint.

1   *14.  A RESPA claim may also be dismissed if the complaint "fails to indicate to whom

2   the qualified written request was addressed, the subject matter of the request," or "the

3   basis for the dispute regarding the amount of the loan."  Vanduzen v. Homecomings

4   Fin., 2009 WL 3246997, at *2 (E.D. Cal. Oct. 7, 2009).

5   In the present case, the Phillipses generally allege that they "repeatedly made

6   timely qualified written requests for documents from Defendants… all of which requests

7   were ignored by Defendants." (Compl. ¶ 43.)  However, each of the Phillipses' specific

8   alleged contacts with JP Morgan fail as QWRs.  The Phillipses' allege that JP Morgan

9   failed to respond to requests for: (1) a copy of their loan file for a forensic loan audit; (2)

10  a written explanation for denying a loan modification; (3) an explanation of their

11  increased monthly payments; and (4) "assistance and urgent attention" from JP

12  Morgan's legal and loss mitigation department. (Id. ¶¶ 13, 25, 27, 28, 43.)  The alleged

13  inquiries fail as QWRs because the requests either did not request loan servicing

14  information[2] or the Phillipses failed to allege the request was written.  Moreover, the

15  Phillipses do not allege actual damages resulting from the failure to respond to QWRs.

16  See § 2605(f).  Accordingly, to the extent the Phillipses' eighth cause of action is a

17  RESPA claim, it is **DISMISSED WITH LEAVE TO AMEND**.

18  //

19

20

21  [2]"Servicing" is defined as:

22

23  [R]eceiving any scheduled periodic payments from a borrower pursuant to the
terms of any loan, including amounts for escrow accounts described in section

24  2609 of this title, and making the payments of principal and interest and such
other payments with respect to the amounts received from the borrower as may

25  be required pursuant to the terms of the loan.

26

27  12 U.S.C. § 2605(i)(3).  A request for information on increased loan payments would qualify
as information on servicing, but the Phillipses do not allege a written request. (Compl. ¶ 27.)

28  The manner of the request is, at best, ambiguous from the face of the Complaint, which
suggests a verbal request because the alleged response from a JP Morgan employee appears to
be verbal. (Id.)

7.      **Breach of Fiduciary Duty**

In their tenth cause of action, the Phillipses allege a breach of fiduciary duty by JP Morgan.  (*Compl.* ¶ 94-100.)  JP Morgan argues that the claim fails because a lender does not have fiduciary obligations to a borrower in the course of a lender-borrower relationship.  (*Def.'s Mot. Dismiss* 12.)   The Phillipses respond that the "unusual confidence and trust [that] was reposed in [Defendant] by Plaintiffs" created a fiduciary relationship.  (*Pls.' Opp'n* 19.)

"A fiduciary or confidential relationship can arise when confidence is reposed by persons in the integrity of others, and if the latter voluntarily accepts or assumes to accept the confidence, he or she may not act so as to take advantage of the other's interest without that person's knowledge or consent."  Pierce v. Lyman, 1 Cal. App. 4th 1093, 1101–02 (1991).  However, the "relationship between a lending institution and its borrower-client is not fiduciary in nature."  Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1093 n.1 (1991).  Absent special circumstances, a lender in an arm's length transaction owes a borrower no fiduciary duty because the lending institution "pursues its own economic interests in lending money."  Perlas v. GMAC Mortg., LLC, 187 Cal. App. 4th 429, 436 (2010) (citation omitted); Nymark, 231 Cal. App. 3d at 1096.  Borrowers "rely on their own judgment and risk assessment to determine whether or not to accept a loan."  Renteria v. United States, 452 F. Supp. 2d 910, 923 (D. Ariz. 2006).

The Phillipses' have not alleged special circumstances "suggesting that [JP Morgan's] involvement in the loan transaction exceeded the scope of the conventional role as a mere money lender."  Khomich v. Bank of Am., N.A., 2011 WL 1087858, at *8 (E.D. Cal. Mar. 23, 2011).  Further, to the extent the Phillipses claim the fiduciary relationship arose at the time of lending, JP Morgan has no liability to the Phillipses due to the PAA's liability limitations.  See Section IIIB1.  For those reasons, the Phillipses' breach of fiduciary duty cause of action is **DISMISSED WITH LEAVE TO AMEND**.

//

//

1

### 8.    Quiet Title

2      In their eleventh cause of action, the Phillipses seek to quiet title to the Property

3 against JP Morgan.  (*Compl.* ¶ 102.)  Again, JP Morgan argues that the Phillipses lack

4 standing to quiet title because they failed to tender the full amount of its obligation to

5 JP Morgan.  (*Def.'s Mot. Dismiss* 12.)  JP Morgan further contends the Phillipses failed

6 to plead the elements for a quiet title cause of action.  (*Id.* at 13.)

7      In a quiet title action, the complaint must state (1) a legal description of the

8 property; (2) the title of the plaintiff and the basis of the title; (3) the adverse claims to

9 the title of the plaintiff; (4) the date as of which the determination is sought; and (5)

10 a prayer for the determination of the title of the plaintiff against the adverse claims.

11 Dyachishin v. Am.'s Wholesale Lenders, 2010 WL 1525703, at *2 (E.D. Cal. April 15,

12 2010) (quotations omitted) (citing Cal. Code Civ. Proc. § 761).  "[A] mortgagor of real

13 property cannot, without paying his debt, quiet his title against the mortgagee."  Miller

14 v. Provost, 26 Cal. App. 4th 1703, 1707 (1994).  A plaintiff cannot sustain a quiet title

15 action without alleging payment of the loan secured by the property or ability to tender

16 the full amount.  See Dyachishin, 2010 WL 1525703, at *2.

17      Here, the Phillipses did not offer to tender the full amount of the loan, and

18 therefore failed to satisfy a prerequisite for a quiet title cause of action.  (*See Compl.* ¶

19 102.)  Moreover, the Phillipses did not allege that the debt secured by the Property has

20 been paid, which would identify the basis for their title.  (*See id.* ¶ 102.)  Accordingly,

21 the Phillipses' quiet title cause of action is **DISMISSED WITH LEAVE TO AMEND**.

22

23

### 9.    Promissory Fraud

24      In their twelfth cause of action, the Phillipses allege that JP Morgan defrauded

25 them by promising to work with them to complete a loan modification with no intention

26 of actually pursuing a modification of the Phillipses' loan.  (*Compl.* ¶¶ 104-109.)  JP

27 Morgan moves to dismiss the cause of action because the Complaint does not state the

28 elements of *promissory estoppel*, particularly reliance, injury, and a definite promise by JP

Morgan.  (*Def.'s Mot. Dismiss* 13.)  Plaintiffs respond that the cause of action is not

promissory estoppel, but *promissory fraud* and, even to the extent the elements of those causes of action overlap, the elements of promissory fraud are sufficiently pled.  (*Pls.' Opp'n* 20.)

"'Promissory fraud' is a subspecies of the action for fraud and deceit.  A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud." Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996).  "The elements of promissory fraud (i.e., of fraud or deceit based on a promise made without any intention of performing it) are: (1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent not to perform at the time the promise was made; (3) intent to deceive or induce the promisee to enter into a transaction; (4) reasonable reliance by the promisee; (5) nonperformance by the party making the promise; and (6) resulting damage to the promise." Behnke v. State Farm Gen. Ins. Co., 196 Cal. App. 4th 1443, 1453 (2011) (citing Muraoka v. Budget Rent–A–Car, 160 Cal. App. 3d 107, 119 (1984)).  Promises in promissory fraud or promissory estoppel claims must be clear and unequivocal.  Hills Transp. Co. v. Sw. Forest Indus., Inc., 266 Cal. App. 2d 702, 708 (1968) (promissory fraud); Garcia v. World Sav., FSB, 183 Cal. App. 4th 1031, 1044 (2010) (promissory estoppel).

JP Morgan argues that, in the promissory estoppel context, the Phillipses failed to plead a definite promise, reliance, or injury. (*Def.'s Mot. Dismiss* 13.)  Assessing those arguments instead in the promissory fraud context, the Court disagrees.  First, the Phillipses allege that "Shelly" in JP Morgan's loan modification department said "I'm going to help you and get this done for you." (*Compl.* ¶ 22.)  The statement can be construed as a promise to modify and is more indicative of a promise than a mere discussion about modification.  See Wells v. Chase Home Fin., LLC, 2010 WL 4858252, at *8 (W.D. Wash. Nov. 19, 2010) (finding that mere statement of pre-requisites to qualify for loan modification was not a promise sufficient to sustain a promissory estoppel claim).  Next, the Phillipses pled that they relied on the promise to modify, which was reasonable given the statement made. (*Compl.* ¶ 107.)  Finally, the Phillipses

allege they were injured by JP Morgan's promise by not seeking alternative methods of saving their home. (*Compl.* ¶¶ 106-07.) JP Morgan did not challenge the sufficiency of the remaining elements of promissory fraud, but the Court notes the Phillipses pled the remaining elements to the extent possible at the pleading stage. (*See Compl.* ¶ 106.) Accordingly, the Phillipses' twelfth cause of action for promissory fraud **STATES A CLAIM FOR RELIEF**.

### 10. Intentional Infliction of Emotional Distress ("IIED")

The Phillipses' fourteenth cause of action against JP Morgan is for intentional infliction of emotional distress. (*Compl.* ¶¶ 116-21.) The Phillipses allege that JP Morgan intentionally engaged in extreme and outrageous conduct throughout the period covered by the complaint, causing the Phillipses to suffer great emotional distress. (*Id.*) JP Morgan argues that its conduct was not, as a matter of law, extreme or outrageous, and therefore cannot support an IIED claim. (*Def.'s Mot. Dismiss* 15.)

The elements of an IIED claim are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Davidson v. City of Westminster, 32 Cal. 3d 197, 209 (1982). To be actionable, the defendant's conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." Id. Generally, the outrageousness of the defendant's conduct is an issue of fact for the jury. Trerice v. Blue Cross of Cal., 209 Cal. App. 3d 878 (1989). Courts may, however, determine as a threshold matter whether the defendant's conduct can "reasonably be regarded as so extreme and outrageous as to permit recovery." Id.

Here, the Phillipses have alleged sufficient facts to proceed on their IIED claim past the pleading phase. Without expressing any opinion on the merits of the Phillipses claim, the Court finds that JP Morgan's conduct can "reasonably be regarded as so extreme and outrageous as to permit recovery." Id. In doing so, the Court notes that

similar conduct in the home mortgage lending context has previously been held to pass this threshold test.  See Johannson v. Wachovia Mortg. FSB, 2011 WL 3443952, *4 (N.D. Cal. Aug. 5, 2011).  Accordingly, the Phillipses' fourteenth cause of action for IIED **STATES A CLAIM FOR RELIEF**.

### 11.   TILA Claims

In their sixteenth cause of action, the Phillipses seek both damages and rescission under TILA, 15 U.S.C. §§ 1635, 1640, due to JP Morgan's failure to provide material disclosures, adjustable rate loan information, comparable loan options, and comparisons with products offered by other lenders.  (*Compl.* ¶¶ 127, 129, 130.)  JP Morgan argues that both of the Phillipses' causes of action under TILA are time-barred and should be dismissed.  (*Def.'s Mot. Dismiss* 16.)  The Phillipses' respond that their TILA claims are not time barred because the limitations period was tolled due to "Defendant's failure to provide the required disclosures and notices."  (*Pls.' Opp'n* 21.)

An action to recover damages under TILA is subject to a one-year statute of limitations that begins to run on the day the loan is consummated.  Hubbard v. Fidelity Fed. Bank, 91 F.3d 75, 79 (9th Cir. 1996); King v. California, 784 F.2d 910, 915 (9th Cir. 1986).  In the present case, the loan was consummated on December 3, 2007 and the action was not filed until May 24, 2011, more than one year after consummation.  (*Def.'s Request for Judicial Notice Exh. A.*)  Accordingly, the Phillipses' damage claims under TILA are time barred unless equitable tolling applies.

Equitable tolling is generally appropriate where "despite due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim" because the complainant was "induced or tricked by his adversary's misconduct into allowing the deadline to pass."  Socop–Gonzalez v. I.N.S., 272 F.3d 1176, 1193 (9th Cir. 2001) (internal quotation marks and alterations omitted); O'Donnell v. Vencor, Inc., 465 F.3d 1063, 1068 (9th Cir. 2008).  But where "nothing prevented the plaintiff from comparing the disclosures made with the disclosures required under TILA," equitable tolling is inappropriate.  Glaser v. Advantage Fin.,

2011 WL 1740082, at *4 (N.D. Cal. May 5, 2011) (citing Hubbard, 91 F.3d at 79). While "it is rarely appropriate to grant a 12(b)(6) motion to dismiss . . . if equitable tolling is at issue," because the applicability of tolling "depends on matters outside the pleadings," a district court may dismiss a claim "[i]f the running of the statute is apparent on the face of the complaint." Huynh v. Chase Manhattan Bank, 465 F.3d 992, 1003-04 (9th Cir. 2006); Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980).

The Phillipses contend that JP Morgan's failure to provide initial notices and disclosures required under TILA tolled the running of the limitations period. (*Compl.* ¶ 128; *Pls.' Opp'n* 21.)  The mere failure to provide notices or disclosures, however, is insufficient to toll the limitations period.  Glaser, 2011 WL 1740082, at *4.  The Phillipses have "not set forth any facts indicating that they *could not* have discovered the deficiencies in the loan documents by comparing those they received with those required under TILA." Id. (emphasis added).  Indeed, there are no factual allegations of trickery by the JP Morgan that prevented the Phillipses from discovering the absence of initial notices and disclosures with reasonable diligence within the one-year limitations period. (*Compl.* ¶¶ 126-31.)  Accordingly, equitable tolling does not apply and the Phillipses' TILA damages claim expired on December 3, 2008.

In addition to damages, TILA also provides borrowers in a consumer credit transactions the right to "rescind the loan agreement if the lender fails to deliver certain forms or to disclose important terms accurately." Beach v. Ocwen Fed. Bank, 523 U.S. 410, 411 (1998) (citing 15 U.S.C. § 1635).  However,

> [a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor.

15 U.S.C. § 1635(f); see also 12 C.F.R. § 226.23(a)(3) (stating same).  As a statute of repose, § 1635(f) provides an "absolute limitation on rescission actions" and cannot be

1    equitably tolled. <u>Miguel v. Country Funding Corp.</u>, 309 F.3d 1161, 1164 (9th Cir. 2002);

2    <u>Taylor v. Money Store</u>, 42 Fed. Appx. 932, 933 (9th Cir. 2002).  Section 1635(f) also

3    extinguishes TILA rescission claims where a property is sold in a foreclosure sale.  <u>Mehta</u>

4    <u>v. Wells Fargo Bank, N.A.</u>, 737 F. Supp. 2d 1185, 1192 (S.D. Cal. 2010); <u>Hallas v.</u>

5    <u>Ameriquest Mortg. Co.</u>, 406 F. Supp. 2d 1176, 1183 (D. Or. 2005).

6         JP Morgan argues that the Phillipses' cause of action for rescission under TILA

7    should be dismissed because the action was time barred.  (*Def.'s Mot. Dismiss* 16.)  The

8    Court agrees.[3]  Like their TILA damages claim, the Phillipses contend that JP Morgan's

9    failure to provide disclosures and notices tolled the limitations period.  (*Compl.* ¶ 128;

10   *Pls.' Opp'n* 21.) That contention plainly fails because equitable tolling does not apply to

11   rescission actions.  <u>Taylor</u>, 42 Fed. Appx. at 933.  The loan was consummated on

12   December 3, 2007 and this action was filed on May 24, 2011, falling outside the absolute

13   three-year limitations period provided by § 1635(f).  Accordingly, the Phillipses'

14   sixteenth cause of action under TILA is **DISMISSED WITHOUT LEAVE TO**

15   **AMEND**.[4]

16

17         **12.    The Phillipses Concede Their Sixth, Thirteenth, Seventeenth**

18              **and Eighteenth Causes of Action**

19         The Phillipses concede their thirteenth and eighteenth causes of action for

20   impossibility and unconscionability because they are defenses to contract claims, not

21   causes of action.  (*Pls.' Opp'n* 20.)  The Phillipses also concede their sixth and

22   seventeenth causes of action for violation of California Civil Code §§ 2923.6 and 1637.

23

24   _____

25       [3] Because the Court finds the expiration of the limitations period provides an absolute
     bar to the Phillipses' rescission action, the Court does not reach JP Morgan's argument that the
26   right to rescind was extinguished when the Property was sold by trustee's sale.  (*Def.'s Mot.*
     *Dismiss* 16)
27

28       [4] The Court also notes that the Phillipses' TILA claims are borrower claims that pre-
     exist the PAA.  JP Morgan has no liability for any purported failures by Washinton Mutual at
     this stage of the loan transaction.  <u>See</u> Section IIIB1.

(*Pls.' Opp'n* 18, 22). Accordingly, the Phillipses' sixth, thirteenth, seventeenth, and eighteenth causes of action are **DISMISSED WITHOUT LEAVE TO AMEND**.

        **13.**    **Unlawful, Unfair, or Fraudulent Business Practices Under California Business and Professions Code § 17200**

California's unfair competition law ("UCL") broadly prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Because § 17200 is written in the disjunctive, it establishes three varieties of unfair competition: acts or practices that are (1) unlawful, (2) unfair, or (3) fraudulent. <u>Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.</u>, 20 Cal. 4th 163, 180 (1999). "The independent unfairness prong of the UCA is intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud." <u>Podolsky v. First Healthcare Corp.</u>, 50 Cal. App. 4th 632, 647 (1996). "The fraud prong of § 17200 is unlike common law fraud or deception. A violation can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage. Instead, it is only necessary to show that members of the public are likely to be deceived." <u>Id.</u> at 647-48.

In their fourth cause of action, the Phillipses allege JP Morgan violated the unlawful, unfair, and fraudulent prongs of § 17200. (*Compl.* ¶ 64.) JP Morgan moves to dismiss each of the Phillipses' claims. (*Def.'s Mot. Dismiss* 7-9.) JP Morgan argues that (1) the unlawful practices claim fails because the Phillipses do not state a claim for a predicate violation of law; (2) the unfair practices claim fails because the Phillipses do not identify a public policy JP Morgan allegedly violated or a practice that is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers"; and (3) the fraudulent practices claim fails because the Complaint lacks specific factual allegations of the fraudulent conduct, representations made, falsity of the representations, or the individual or corporate identity making the false representations. (*Def.'s Mot. Dismiss* 7-9.) Additionally, JP Morgan argues that the Phillipses lack standing to assert a UCL claim because they have suffered no injury in fact. (*Id.* at 9.)

11-CV-1404W

1
a.     Standing

2       In order to have standing to pursue a claim under the UCL, a plaintiff must

3 demonstrate (1) injury in fact, and (2) economic injury—the loss of money or property

4 caused by unfair competition.  Peterson v. Cellco P'ship, 164 Cal. App. 4th 1583, 1590

5 (2008).  Because economic injury is itself a form of injury in fact, the second standing

6 requirement under the UCL serves to narrow the type of injury in fact necessary to

7 establish standing.  Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 323-24 (2011).

8 A plaintiff whose present or future property interest has been diminished as a result of

9 unfair competition has suffered an economic injury, and therefore an injury in fact as

10 well.  Id. at 323.

11       The Phillipses allege that JP Morgan's acts resulted ultimately in the wrongful

12 foreclosure of the Property.  (See Compl.)  This foreclosure undoubtedly diminished the

13 Phillipses' property interest in the Property.  Consequently, the Phillipses have suffered

14 an economic injury in fact as a result of JP Morgan's alleged acts, and have standing to

15 assert a UCL claim.  See Kwikset, 51 Cal. 4th at 323-24

16

17
b.     Underlying Business Acts

18       "An action based on Business and Professions Code § 17200 to redress an

19 unlawful business practice 'borrows' violations of other laws and treats these violations,

20 when committed pursuant to business activity, as unlawful practices independently

21 actionable under § 17200 et seq. and subject to the distinct remedies provided

22 thereunder."  Farmers Ins. Exch. v. Superior Court, 2 Cal. 4th 377, 383 (1992).

23 "Violation of almost any federal, state, or local law may serve as the basis for a [UCL]

24 claim ."  Plascencia v. Lending 1st Mortg., 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008)

25 (citing Saunders v. Superior Court, 27 Cal. App. 4th 832, 838-39 (1994)).  "Even if the

26 violation of another law does not create a private right of action, if the violation

27 constitutes unfair competition, it is actionable."  McKell v. Wash. Mut., Inc., 142 Cal.

28 App. 4th 1457, 1475 (2006).

1    Here, the Phillipses have stated a claim for promissory fraud that survives JP
2    Morgan's motion to dismiss.  See Section IIIB9.  In their promissory fraud claim, the
3    Phillipses allege, with particularity, that business acts attributable to JP Morgan
4    prevented the Phillipses from seeking alternative methods of saving their property from
5    foreclosure.  (*Compl.* ¶¶ 104-09.)  Theses allegations are sufficient to support a UCL
6    claim at least under the unlawful and fraudulent prongs.  Thus, the Phillipses' fourth
7    cause of action for violation of California's UCL **STATES A CLAIM FOR RELIEF**.

8

9                    **14.    Declaratory Relief**

10    Finally, JP Morgan argues that the Phillipses' fifteenth cause of action for
11    declaratory relief fails for the same reasons each of their other claims fail.  (*Def.'s Mot.*
12    *Dismiss* 15.  The Phillipses' seek declaratory relief as an alternative form of recovery to
13    ascertain their rights respecting the Property.  (*See Compl.* at ¶¶ 122-25; *Pls.' Opp'n* 21.)
14    Specifically, the Phillipses ask the Court to declare that JP Morgan's foreclosure of the
15    Property was void due to alleged violations of state and federal laws discussed above.
16    (*Id.* at ¶ 125.)  However, the Phillipses failed to state a claim for relief in all causes of
17    action that affect JP Morgan's power to conduct a valid foreclosure sale of the Property.
18    The only claims that survive JP Morgan's motion to dismiss are for promissory fraud,
19    IIED, and violation of California's UCL, which are claims for damages.  See Sections
20    IIIB9, 10, 13.   Accordingly, the Phillipses' fifteenth cause of action is **DISMISSED**
21    **WITH LEAVE TO AMEND**.

22

23    **IV.    C**ONCLUSION AND **O**RDER

24    For the foregoing reasons, the Court **GRANTS** JP Morgan's motion to dismiss
25    the Phillipses' fifth, sixth, seventh, ninth, thirteenth, sixteenth, seventeenth, and
26    eighteenth causes of action **WITHOUT LEAVE TO AMEND.**  The Court also
27    **GRANTS** JP Morgan's motion to dismiss the Phillipses' first, second, third, eighth,
28    tenth, eleventh, and fifteenth causes of actions **WITH LEAVE TO AMEND** to the

extent indicated herein.  Finally, the Court **DENIES** JP Morgan's motion to dismiss the Phillipses' fourth, twelfth and fourteenth causes of action.

**IT IS SO ORDERED.**

DATED:  November 14, 2011

_____
Hon. Thomas J. Whelan
United States District Judge

11-CV-1404W